**FILED**
**MARCH 22, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35543-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| BENJAMIN E. STUTZKE, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Benjamin Stutzke was charged with voyeurism, violation of a protection order, felony stalking, and attempted residential burglary. After Mr. Stutzke vacillated between exercising his rights to appointed counsel and self-representation, the court determined Mr. Stutzke had waived the right to counsel through conduct. Mr. Stutzke then proceeded to represent himself during a bench trial. He was convicted of all charges with the exception of residential burglary. Mr. Stutzke now appeals, arguing: (1) insufficient evidence supports the voyeurism conviction, and (2) the court deprived him of the right to counsel. He also raises some technical issues with respect to his sentence. We affirm Mr. Stutzke's convictions, but remand for resentencing.

FACTS[1]

*Offense conduct*

The Stutzke and Townshend families were longtime neighbors. After Mr. Stutzke

reached adulthood, he began exhibiting unwanted attention toward Ms. Townshend. Ms.

Townshend eventually obtained an antiharassment protection order. The order prohibited

Mr. Stutzke from making contact with Ms. Townshend or coming within 50 feet of her

property.[2] The order was set to expire in 2015.

Things between Mr. Stutzke and Ms. Townshend came to a head on August 16,

2013. Ms. Townshend awoke around 6:00 a.m. and opened her bedroom blinds and

window. She then returned to bed and laid on top of the covers while naked. After

briefly dozing off, Ms. Townshend awoke to see Mr. Stutzke standing at the open

window, his hands resting on the window sill while he stared at her. Ms. Townshend

immediately went to close the blinds but, in her haste and fear, she pulled the blinds from

---

[1] Mr. Stutzke does not challenge any of the trial court's findings of fact from his bench trial, making them verities on appeal. *State v. Munson*, 120 Wn. App. 103, 106, 83 P.3d 1057 (2004). The factual background here is drawn from the trial court's unchallenged findings. The procedural background is drawn from other parts of the record.

[2] Ms. Townshend actually obtained two separate no-contact orders, covering different time periods. Only the second order, entered during March 2013, is pertinent to this appeal.

2

the wall. Ms. Townshend shouted at Mr. Stutzke to leave, but he did not. Mr. Stutzke never turned away or averted his gaze. He did not appear frightened or nervous when Ms. Townshend caught him. Mr. Stutzke remained fixated on Ms. Townshend until she retreated to an area of the room that was out of Mr. Stutzke's range of sight.

Ms. Townshend called the police to report Mr. Stutzke's behavior. Mr. Stutzke was arrested shortly thereafter.

*Procedural background*

*Initial phase of proceedings*

The State charged Mr. Stutzke with voyeurism, violation of a civil antiharassment protection order, stalking, and attempted residential burglary. Mr. Stutzke was originally released from custody pending trial. But he violated his release terms and was remanded back into custody.

For approximately two years, Mr. Stutzke was represented by the same appointed attorney. Disposition of the case was delayed to allow for two separate competency evaluations. Mr. Stutzke was ultimately deemed competent to stand trial. During the period the case was continued for the competency evaluations, Mr. Stutzke waived his jury trial rights, but then rescinded the waiver.

3

In early December 2015, Mr. Stutzke appeared in court and asked to dismiss his assigned counsel.  Mr. Stutzke explained he wanted to be released from custody so he could find a job and hire a private attorney.  Mr. Stutzke claimed the passage of time was a reason for his release, since he had likely already overserved any potential sentence. The court denied Mr. Stutzke's release request, explaining the passage of time was not a relevant consideration.  The court informed Mr. Stutzke his choice was to either go forward with existing counsel or proceed pro se.  The court then began to advise Mr. Stutzke of the dangers and disadvantages of waiving counsel, but Mr. Stutzke equivocated.  He stated he wanted an attorney, just not the one currently assigned.  The court ultimately ruled Mr. Stutzke's current attorney would remain on the case as there was no basis for appointing substitute counsel.

*Waiver of counsel and self-representation*

On December 15, 2015, Mr. Stutzke filed a motion to proceed pro se.  The court engaged Mr. Stutzke in a full colloquy regarding the potential consequences of a conviction and the dangers and disadvantages of waiving the right to counsel.  Mr. Stutzke again asked to be released so he could hire private counsel.  This was denied. The court again informed Mr. Stutzke his choice was either to remain with his current counsel or proceed pro se.  Mr. Stutzke opted for the latter.  The court warned Mr.

4

Stutzke that once he waived his right to counsel, his waiver could apply for the entire case, even if Mr. Stutzke grew to have second thoughts. Mr. Stutzke indicated he understood. The court then permitted Mr. Stutzke to represent himself and also appointed standby counsel.

Mr. Stutzke's conduct as a pro se litigant was poor. At one point, he had to be brought to court in restraints after refusing to come voluntarily. He also refused to meet with the prosecutor to exchange discovery. The trial court decided to hold regular status conferences with Mr. Stutzke in order to ensure his case moved forward.

During his pretrial status conferences, Mr. Stutzke continued to request release from custody. The court repeatedly denied Mr. Stutzke's requests, explaining Mr. Stutzke posed a risk of nonappearance and that the passage of time did not change this circumstance. In addition to repeatedly asking for release, Mr. Stutzke asked for continuances to allow for adequate preparation. The trial court worked with Mr. Stutzke regarding his trial preparation requests. Trial was set for February 29, 2016.

*Rescission of self-representation and appointment of new counsel*

On February 18, 2016, Mr. Stutzke appeared in court for a pretrial conference. He indicated he would like to have appointed counsel represent him at trial. The trial court expressed concern Mr. Stutzke was delaying the proceedings by vacillating on the issue

5

of counsel. But the court ultimately decided to appoint counsel out of an abundance of caution. Mr. Stutzke's standby attorney was appointed as full legal counsel. Trial was then continued to May 23, 2016. Mr. Stutzke renewed his request for pretrial release based on the passage of time. Once again, that request was denied.

Shortly after receiving appointed counsel, Mr. Stutzke began to complain about his attorney's performance. The accusations started on May 13 when Mr. Stutzke alleged his attorney smelled of alcohol. The court determined this complaint was unfounded. Three days later, Mr. Stutzke came back to court. His attorney reported Mr. Stutzke had refused an attorney-client meeting and requested the attorney's supervisor appoint new counsel. Mr. Stutzke continued to criticize his attorney's conduct and, at this point, requested self-representation. The court passed over this request and ordered Mr. Stutzke's current attorney to stay on the case. The court informed Mr. Stutzke he could not keep changing his mind regarding appointment of counsel. The court concluded the hearing after Mr. Stutzke became verbally disruptive.

*Waiver of counsel by conduct*

On May 23, 2016—the date scheduled for trial—Mr. Stutzke's attorney brought a motion requesting leave to withdraw. Counsel advised the court that Mr. Stutzke had persisted in his alcohol allegations, Spokane County Risk Management was now

6

involved, and an investigation was imminent. Mr. Stutzke's attorney and counsel for the State both expressed concern that Mr. Stutzke's actions placed him in an adversarial position not only with his current attorney but the entire public defender's office. Mr. Stutzke's attorney informed the court that things had risen to a level such that there could no longer be an attorney-client relationship between himself and Mr. Stutzke.

The court granted defense counsel's request to withdraw. The court reiterated that Mr. Stutzke's complaints against his attorney were unfounded.

With assigned counsel released from his duties, the trial court informed Mr. Stutzke it needed to determine what to do regarding counsel. The court recapped the history of Mr. Stutzke's case. Over the course of three years' litigation, Mr. Stutzke: (1) missed an arraignment, (2) violated release conditions, (3) was the subject of two competency evaluations, (4) waived jury trial and then rescinded the waiver, (5) fired his first public defender in order to proceed pro se, (6) refused to come to court multiple times despite being warned he must do so, (7) refused to meet with the prosecutor or attend scheduled witness interviews he asked for despite being informed he must do so, (8) asked for and received a new public defender, thus delaying trial, and then (9) alleged the new public defender was intoxicated in court and refused to meet with him. Based on these circumstances, and out of concern for Ms. Townshend to have this case resolved,

the trial court found Mr. Stutzke had "constructively waived" his right to an attorney and would be proceeding without one. Report of Proceedings (RP) (May 23, 2016) at 193-94.

### *Trial and disposition*

The case proceeded to a bench trial after Mr. Stutzke waived his jury trial rights for the second time. The court found Mr. Stutzke guilty of all charges except attempted residential burglary. For the violation of a protection order conviction, the trial court imposed 364 days of confinement and 24 months of community custody. On the stalking conviction, Mr. Stutzke was sentenced to 18 months of community custody for a violent offense. The trial court also entered a sexual assault protection order for Ms. Townshend, with the order to expire on August 18, 2026.

Mr. Stutzke appeals his convictions and sentence.

## ANALYSIS

### *Voyeurism conviction*

Mr. Stutzke contends insufficient evidence supports his conviction for voyeurism. Because his arguments turn on the proper interpretation of the voyeurism statute, our review is de novo. *State v. Diaz-Flores*, 148 Wn. App. 911, 915, 201 P.3d 1073 (2009). When embarking on statutory interpretation, we focus on the language used by the

8

legislature. *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011).

If the meaning of a statute is plain on its face, we will not resort to tools of construction

such as legislative history. *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*,

125 Wn.2d 305, 312, 884 P.2d 920 (1994). Instead, we will give effect to the statute's

plain meaning. *Schneider*, 173 Wn.2d at 363.

The legislature has defined the crime of voyeurism (now first degree voyeurism)

through a single sentence, containing several component parts. The controlling sentence

at the time of the offense conduct stated:

> (2) A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly *views*, photographs, or films:
> (a) *Another person without that person's knowledge and consent* while the person being viewed, photographed, or filmed is in a place where he or she would have a reasonable expectation of privacy; or
> (b) *The intimate areas of another person without that person's knowledge and consent* and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

Former RCW 9A.44.115(2) (2003) (emphasis added).[3]

The verb "views," as used in the voyeurism statute, has a special meaning.

RCW 9A.44.115(1)(e). It does not include a momentary or casual observation. Instead,

---

[3] The trial court found Mr. Stutzke guilty under both alternatives.

9

in order to "view" something for purposes of voyeurism, a defendant's act of observation must last "for more than a brief period of time."[4]

Understanding the meaning of the sentence used to define voyeurism involves analyzing its grammatical structure.[5] The subject of the sentence is the individual charged with the offense. Pertinent to this appeal, the verb is the word "views." The verb has two possible direct objects: either "[a]nother person" or the "intimate areas of another person." Former RCW 9A.44.115(2)(a), (b). The verb is also modified by the prepositional phrase "without knowledge and consent." At issue in this appeal is the significance of this prepositional phrase.

Mr. Stutzke contends that because the prepositional phrase has two objects—knowledge and consent—each object serves to independently modify the verb "views." In other words, he claims the crime of voyeurism is committed when an individual views another person without their knowledge and also views that person without their consent. Under Mr. Stutzke's reading, if an individual merely views the victim without the

---

[4] The full definition of "views" is as follows: "the intentional looking upon of another person for more than a brief period of time, in other than a casual or cursory manner, with the unaided eye or with a device designed or intended to improve visual acuity." RCW 9A.44.115(1)(e).

[5] Because voyeurism is confined to a single statute, our analysis is not guided by related statutory provisions or other context. *Cf. Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 13, 43 P.3d 4 (2002).

victim's consent, but does not also view them without their knowledge, then there is no crime.

The flaw in Mr. Stutzke's reasoning is that it confuses the existence of a two-word prepositional object ("knowledge" and "consent") with the existence of two prepositional phrases ("without knowledge" and "without consent"). "Without knowledge and consent" is one prepositional phrase that modifies the verb "views" by requiring the defendant's act of viewing be without the combination of knowledge and consent. Based on the wording of the statute, if either knowledge or consent is absent, then the combination is not present and the statute is satisfied. An analogy would be RCW 46.16A.030(2), which prohibits operating a vehicle without proper "registration and displaying license plates." A violation occurs so long as one component of the registration and license plate combination is missing. There is no requirement that both be absent.

Our case law has previously interpreted voyeurism in this manner. In *State v. Fleming*, 137 Wn. App. 645, 647-48, 154 P.3d 304 (2007), we found the defendant committed voyeurism when he was caught peering down at a woman who was seated inside of a bathroom stall. Given the only witnesses were the woman and the defendant, there was no third party evidence of how long the defendant had been looking at the

11

victim prior to being caught. However, the defendant continued to look at the victim as she yelled at him, told him she had a cell phone, yelled for help, and then ran out of the stall. We held that the defendant's conduct, all of which occurred with the victim's knowledge but not consent, was sufficiently prolonged to fall under the verb "views" and thus the statute was met. It did not matter that the State failed to present evidence indicating the defendant viewed the woman for an appreciable period of time without her knowledge.

Here, the State presented more than sufficient evidence to satisfy the plain terms of the voyeurism statute. The evidence showed Mr. Stutzke began watching Ms. Townshend's naked body while she was lying on her bed. Mr. Stutzke then continued to observe Ms. Townshend as she looked up at him, yelled at him to leave, rushed to her window, and tried to close the blinds. The entire episode lasted more than a brief period of time. It was never consensual. Sufficient evidence supports Mr. Stutzke's conviction.

*"Constructive waiver" of right to counsel & motion to withdraw*

An individual accused of a crime has a constitutional right to the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. But this right does not permit a defendant to deliberately or inadvertently delay trial by refusing to engage with counsel. *City of Tacoma v. Bishop*, 82 Wn. App. 850, 856, 859, 920 P.2d 214 (1996);

12

*see also State v. DeWeese*, 117 Wn.2d 369, 379, 816 P.2d 1 (1991) ("A defendant may not manipulate the right to counsel for the purpose of delaying and disrupting trial."). A defendant can lose the right to counsel in three ways: (1) waiver, (2) forfeiture, or (3) waiver by conduct. *Bishop*, 82 Wn. App. at 858-59; *see also United States v. Goldberg*, 67 F.3d 1092, 1099-1103 (3rd Cir. 1995). The focus here is waiver by conduct.

Prior to finding a defendant has waived the right to counsel by conduct, the trial court must provide two types of warnings. First, the court must advise a defendant of the consequences of proceeding without counsel, as contemplated by the *Faretta*[6] standard. *Bishop*, 82 Wn. App. at 860. Second, the court must warn the defendant that the right to counsel will be lost if the defendant engages in dilatory tactics or misconduct. *Id*.; *City of Seattle v. Klein*, 161 Wn.2d 554, 562, 166 P.3d 1149 (2007); *see also Goldberg*, 67 F.3d at 1101. The court's warnings need not be timed to closely precede the defendant's misconduct. *State v. Afeworki*, 189 Wn. App. 327, 346, 358 P.3d 1186 (2015). Nor must the court's warnings follow a particular formula or script. *See Iowa v. Tovar*, 541 U.S. 77, 88, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004).

---

[6] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

The trial court provided Mr. Stutzke with both types of requisite warnings before declaring waiver of counsel by conduct. There is no real dispute that the court provided full *Faretta* warnings. This happened when Mr. Stutzke originally waived his right to counsel on December 15, 2015. In addition, the court took care to warn Mr. Stutzke that his conduct could result in waiver of the right to counsel. Specifically, the court repeatedly told Mr. Stutzke his options regarding counsel were limited; he could either accept representation by the court's chosen attorney or proceed pro se. Through his conduct, Mr. Stutzke made his choice clear. By concocting[7] a conflict that effectively pushed his court-appointed attorney out of the case, Mr. Stutzke selected self-representation. He was not entitled to a third option. *State v. Sinclair*, 46 Wn. App. 433, 437, 730 P.2d 742 (1986); *United States v. Moore*, 706 F.2d 538 (5th Cir. 1983) ("[A] persistent, unreasonable demand for dismissal of counsel and appointment of new counsel . . . is the functional equivalent of a knowing and voluntary waiver of counsel."). The trial court's finding of waiver by conduct was fully warranted.[8]

---

[7] The trial court made a factual finding that Mr. Stutzke's accusations against trial counsel were unfounded. We will not disturb that finding on appeal.

[8] Because Mr. Stutzke's conduct amounted to a waiver of the right to counsel, the trial court was necessarily authorized to grant defense counsel's motion to withdraw.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

*Sentencing issues & scrivener's error*

Mr. Stutzke alleges several sentencing errors. We accept the State's concession as to all asserted errors and therefore keep our discussion brief.

*Merger of conviction for violation of a civil antiharassment order*

Mr. Stutzke's stalking charge was elevated from a misdemeanor to a felony because it was committed in violation of a preexisting antiharassment protection order. RCW 9A.46.110(5)(b)(ii). Given this circumstance, the offenses of stalking and violation of the harassment order merged. *See State v. Whittaker*, 192 Wn. App. 395, 399, 415-16, 367 P.3d 1092 (2016); *State v. Parmelee*, 108 Wn. App. 702, 710-11, 32 P.3d 1029 (2001). Remand is required so the conviction for violating a protection order can be vacated and the related community custody term stricken.

*18-month community custody term on stalking conviction*

Because stalking is a crime against the person, not a crime of violence, the court should have limited the term of community custody for Mr. Stutzke's stalking conviction

to 12 months.  RCW 9.94A.411(2)(a), .701(3)(a).  This correction shall be made on remand.

## Sexual assault protection order

Upon conviction for a sex offense, a trial court may enter a sexual assault protection order that restricts the defendant's ability to have contact with the victim. RCW 7.90.150(6)(a).  When such an order is entered in conjunction with a criminal prosecution, the order shall remain in effect for a period of two years "following the expiration of any sentence of imprisonment and subsequent period of community supervision, conditional release, probation, or parole."  RCW 7.90.150(6)(c).  On remand for resentencing, the trial court shall modify the length of the sexual assault protection order to comply with the terms of RCW 7.90.150(6)(c).

## Scrivener's error

The judgment and sentence correctly indicates Mr. Stutzke was convicted of felony stalking under RCW 9A.46.110(5)(b)(ii).  But the judgment and sentence also incorrectly indicates that a conviction under that subsection is for domestic violence. Domestic violence stalking is RCW 9A.46.110(5)(b)(i), not (5)(b)(ii).  This scrivener's error can be corrected during resentencing.  *See State v. Munoz-Rivera*, 190 Wn. App. 870, 895, 361 P.3d 182 (2015).

No. 35543-8-III
*State v. Stutzke*

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Stutzke has filed a statement of additional grounds for review, but does not

identify any specific basis for relief. We decline consideration pursuant to RAP 10.10(c).

CONCLUSION

Mr. Stutzke's convictions are affirmed. This matter is remanded for resentencing

and correction of a scrivener's error.

_____
Pennell, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

17