**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52362-1-II |
| Respondent, | |
| v. | |
| MICHAEL LEON PALMER, | PUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Michael Palmer appeals his convictions and sentence for child molestation in the first degree, assault in the fourth degree, and assault of a child in the second degree. He argues that the trial court violated his constitutional rights to counsel, confrontation, self-representation, due process, and against self-incrimination. Palmer also raises five grounds in his statement of additional grounds (SAG) for review, contending that each error requires dismissal of his convictions with prejudice. We disagree that Palmer's convictions should be dismissed with prejudice, but because the trial court violated Palmer's constitutional right to counsel, we reverse and remand for a new trial.

## FACTS

Palmer and his girlfriend, DD, moved in together in 2013. They lived together with DD's two biological children from a prior marriage, her son AD, and her daughter PD. PD has a diagnosis of autism. Palmer and DD also had a baby together, LP. Sometime in 2014, the family moved to Washington. Palmer served as caregiver to the children and in that role disciplined both PD and AD. Child Protective Services (CPS) had been involved with the family, taking custody

52362-1-II

of the children in 2015, but releasing LP to Palmer's custody and PD and AD to DD's custody. Palmer subsequently moved from the family residence with LP, but would visit DD's house on weekends with LP.

During a family car trip in 2016, Palmer grabbed AD by the neck, leaving a scratch. At some point after the car trip incident, Palmer told DD that PD had touched his penis. Thereafter, PD disclosed to DD that Palmer had touched her vagina. Approximately four months after PD's disclosure, DD contacted law enforcement. Law enforcement authorities interviewed the children on two separate occasions.

Detective Richard Ramirez participated in PD's interview during which he learned of the accusations against Palmer. Eventually, Ramirez took Palmer into custody, read him *Miranda*[1] rights, and questioned him. Ramirez ended the questioning after Palmer repeatedly refused to admit to any wrongdoing. Ramirez returned the next morning for additional questioning, but Palmer refused to talk. The State charged Palmer with one count of child molestation in the first degree and two counts of assault of a child in the second degree.

While the case was pending, Palmer had several disputes with his appointed attorneys. Palmer's first appointed attorney requested to withdraw due to the absence of a working relationship. When the trial court asked Palmer whether he wanted to dismiss counsel, Palmer responded that he was already preparing a "motion to dismiss" his attorney due to ineffective assistance of counsel. Report of Proceedings (RP) (Oct. 27, 2017) at 3. Palmer said the basis of the motion was that counsel failed to show up to appointments, and he felt counsel had lied to him. The court granted the first attorney's request to withdraw.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

52362-1-II

The trial court appointed a second attorney. A few months later, Palmer's second attorney told the court that he was close to requesting to withdraw because communications between he and Palmer had become strained. Approximately a month after that, Palmer informed the court that he was claiming ineffective assistance of counsel against his second attorney. He told the court that he did not want his attorney to withdraw, but instead wanted him to conduct further investigation to acquire additional evidence. The attorney believed the investigations Palmer wanted would be inappropriate. Based on Palmer's statements that he did not want counsel to withdraw, the court kept the second attorney on the case.

A couple of days later, the second attorney requested to withdraw because Palmer no longer trusted him and had accused him of lying. Counsel also stated that there had been a complete breakdown in the attorney-client relationship. The court denied the attorney's motion and requested that counsel finish an ongoing CrR 3.5 child hearsay and child competency hearing. After the hearing, counsel again requested to withdraw, this time citing his safety and professional standing. The court made no findings or inquiry regarding why counsel felt his safety was at risk but nonetheless granted the second attorney's request and allowed him to withdraw.

The trial court appointed a third attorney to represent Palmer. When Palmer asked whether he could receive a standby attorney in case the third attorney withdrew, the court told Palmer, "You have all the attorneys you are going to get right there." RP (Mar. 12, 2018) at 35. The court did not inform Palmer of the risks he would face if he dismissed the third attorney and proceeded pro se.

3

Three months later, Palmer wrote an extensive memorandum detailing ineffective assistance of counsel claims against his third attorney. He also named this third attorney in a federal civil rights lawsuit. Counsel requested to withdraw, and the trial court granted his request. The court made no findings regarding counsel's request to withdraw.

After Palmer's third assigned attorney withdrew, the trial court determined that Palmer had waived his right to counsel via his conduct. The court explained that Palmer had intentionally delayed trial by creating "artificial, unfounded, and unwarranted conflicts" with his previously appointed attorneys. RP (June 15, 208) at 202. The court refused to provide Palmer with another attorney, forcing him to proceed pro se. The court appointed a fourth attorney as Palmer's standby counsel because the law library was inaccessible to Palmer. After his attorneys had withdrawn, Palmer sought to acquire additional discovery from the State.

Prior to trial, the State moved to have AD and PD face away from Palmer while they testified and asked the court to have standby counsel conduct the questioning on Palmer's behalf. The State conceded that while "the RCWs" allow complaining witnesses to testify via one-way teleconferencing, the statute does not apply to pro se defendants.[2] RP (June 29, 2018) at 50. The trial court determined that "children are entitled to be treated carefully in court," and granted the State's request. RP (June 29, 2018) at 58. The court made no findings that AD or PD would suffer emotional detriment if required to testify while facing Palmer or if Palmer questioned them.

During the trial, DD testified about an incident she witnessed where Palmer grabbed AD by the neck, leaving a mark that was later seen by a social service organization. She also testified about an incident that Palmer had told her about, saying, "Mr. Palmer had said that . . . he had been in bed naked while I was shopping, and he was watching the kids, and [PD] had gotten into the

---

[2] While "the RCWs" are voluminous, the State may have been referring to RCW 9A.44.150.

4

52362-1-II

bed to play with his penis." RP (July 3, 2018) at 292. DD further testified that when she asked PD whether Palmer had touched her vagina, PD told her yes. The State questioned Ramirez at trial and asked if he had spoken to Palmer after his initial interview. In the presence of the jury, Ramirez testified that he "went back the next morning, thinking that, you know, a day sitting in the county jail, you know, there's some time to think, and maybe Mr. Palmer would want to do the right thing here." RP (July 5, 2018) at 75. Ramirez further testified that he told Palmer, "You've had some time to think. Do you want to talk?" and that Palmer responded that he did not want to talk. RP (July 5, 2018) at 75.

Also at trial, the court required standby counsel to read Palmer's questions to AD and PD in lieu of Palmer conducting the cross-examination, as he had with the other witnesses. Before standby counsel read Palmer's questions to PD, the court clarified standby counsel's role, telling the jury that counsel was not acting as an attorney cross-examining the witness, but rather as a conduit for Palmer. The court repeated this explanation before AD's testimony. The court also told the jury that standby counsel was asking questions prepared by Palmer, which is in fact what occurred.

Palmer testified at trial. He admitted to touching PD's vagina, but asserted that the touching was inadvertent and occurred as a defensive reaction when he attempted to push PD away. He also admitted to physically disciplining AD and PD.

A jury convicted Palmer of child molestation in the first degree, assault in the fourth degree, and assault of a child in the second degree. The trial court sentenced Palmer to an indeterminate sentence of 82 months to life imprisonment and ordered 18 months of community custody for his assault of a child in the second degree conviction and 12 months of community custody for his assault in the fourth degree charge. The court also imposed several community custody conditions.

5

52362-1-II

Palmer appeals his convictions and sentence.

ANALYSIS

I.      RIGHT TO COUNSEL

Palmer argues that he was wrongly deprived of his right to counsel when the trial court determined he had forfeited his right due to misconduct. We agree.

A.      Standard of Review

Palmer challenges the constitutionality of the trial court's holding that he waived his right to counsel. Constitutional challenges are issues of law, and we review such challenges de novo. *State v. Price*, 169 Wn. App. 652, 655-56, 281 P.3d 331 (2012).

B.      Legal Principles

A criminal defendant has a constitutional right to the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. However, such right does not entitle a defendant to deliberately or inadvertently delay trial by his dilatory conduct. *State v. Stutzke*, 2 Wn. App. 2d 927, 937, 413 P.3d 1037 (2018). A defendant can lose the right to counsel through forfeiture, waiver, or waiver by conduct. *Id.*

Violation of the right to counsel is a "structural error" not subject to the harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991). "[D]eprivation of the right to counsel at trial . . . [is a] structural defect[] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards. The entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal defendant." *Id.*

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

52362-1-II

C.      Palmer Was Deprived of His Right to Counsel

The trial court failed to adequately inform Palmer that his conduct would result in the loss of counsel, and Palmer's behavior did not rise to the level of extremely dilatory conduct. Therefore, we conclude that the trial court deprived Palmer of his right to counsel when it refused to appoint him an additional attorney.

1.      Palmer Did Not Forfeit His Right to Counsel

Forfeiture of the right to counsel requires a defendant to have engaged in "extremely dilatory" conduct.[3]  *City of Tacoma v. Bishop*, 82 Wn. App. 850, 859, 920 P.2d 214 (1996). Forfeiture results in the loss of the right to counsel regardless of whether the court has warned the defendant of the consequences of their misconduct or the risks of proceeding without counsel. *Id*. Conduct that prevents an attorney from preparing a defense may constitute "'extremely dilatory conduct.'" *In re Dependency of E.P.*, 136 Wn. App. 401, 405-406, 149 P.3d 440 (2006) (internal quotation marks omitted) (*In re Welfare of G.E.*, 116 Wn. App. 326, 334, 65 P.3d 1219 (2003)). While *E.P.* discussed the right to counsel in a dependency context, the legal principles apply here.

In *E.P.*, a mother was appointed two different attorneys to represent her in her child's dependency hearing. 136 Wn. App. at 403-04. The first attorney withdrew after the mother failed to communicate. *Id*. The second attorney withdrew for the same reason and argued that he had no information on how the mother wished to proceed so he could not represent her. *Id*. at 404. After the mother failed to show up for the hearing, the family court terminated her parental rights. *Id*. at 404. On appeal, the mother argued that she was denied the right to counsel. *Id*. The court determined that the mother's complete failure to communicate with her attorneys constituted

---

[3] A study of the authorities discussed herein shows that "extremely dilatory conduct" under the *forfeiture* theory is distinct from both *voluntary waiver*, and separately, "dilatory tactics and misconduct" under the *waiver by conduct* theory.

7

52362-1-II

extremely dilatory conduct. *Id*. at 406. Further, the court ruled that she had forfeited her right to counsel because of her extremely dilatory conduct. *Id*.

A defendant also engages in extremely dilatory conduct when they are abusive or threatening towards their attorney. *United States v. Thomas*, 357 F.3d 357, 362-63 (3rd Cir. 2004). In *Thomas*, the court found that the defendant had threatened to harm his attorney, tore up his correspondence, refused to provide the names of potential witnesses, hung up on him over the phone, and demanded that he file frivolous claims. *Id*. at 363. On appeal, the Third Circuit Court of Appeals determined that the defendant's threatening and abusive behavior constituted extremely dilatory conduct, resulting in his forfeiture of the right to counsel. *Id*.

Here, Palmer's behavior did not constitute extremely dilatory conduct. Palmer was clearly dissatisfied with all three of his appointed attorneys. Palmer's dissatisfaction resulted in several substitutions of counsel, which delayed his trial, as each substitution necessitated a continuance. However, while Palmer's conduct resulted in delays, the only support in the record that his conduct was *extremely* dilatory comes from his third attorney's comment that he feared for his personal safety. The State claims Palmer threatened his attorney, but the record does not support this assertion. The State references judicial findings but there are no such findings in the record before us. Because the record does not show that Palmer's behavior was threatening or abusive like the defendant's behavior in *Thomas*, or that he refused to communicate with his attorneys, like the mother in *E.P.*, we cannot conclude that Palmer engaged in extremely dilatory conduct. Consequently, we hold that Palmer did not forfeit his right to counsel. We next turn to voluntary waiver.

8

52362-1-II

    2.      Palmer Did Not Voluntarily Waive his Right to Counsel

Voluntary waiver occurs when a defendant voluntarily decides to proceed without the assistance of counsel. *Faretta v. California*, 422 U.S. 806, 819-21, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Madsen*, 168 Wn.2d 496, 503-04, 229 P.3d 714 (2010). To validly and effectively waive the right to counsel, the record must unequivocally demonstrate that the accused knowingly, intelligently, and voluntarily waived assistance of counsel. *Faretta*, 422 U.S. at 819-21. Nothing in the record before us demonstrates that Palmer expressly waived his right to counsel. We next turn to waiver by conduct.

    3.      Palmer Did Not Waive His Right to Counsel by Conduct

A defendant may also waive their right to counsel by conduct. *Stutzke*, 2 Wn. App. 2d at 937-38. Waiver by conduct occurs when the court advises a defendant of (1) the dangers of proceeding pro se as required for voluntary waiver, and (2) that the defendant will lose the right to counsel if they engage in *dilatory tactics or misconduct*. *Id*. at 937-38. This is notably distinct from "extremely dilatory conduct" under forfeiture.

The trial court failed to inform Palmer of the risks of proceeding pro se. The State asserts that the trial court informed Palmer that the third attorney would be his last assigned attorney. But, even assuming the trial court unambiguously told Palmer that it would not assign him another attorney (which we do not conclude here), the court did not warn Palmer of the risks of proceeding pro se. Without such warning, Palmer could not have waived his right to counsel by conduct. *See Stutzke*, 2 Wn. App. 2d at 937-38. We conclude accordingly.

9

52362-1-II

4.  Conclusion

The trial court erred in determining Palmer had waived his right to counsel and thereby violated this right by requiring Palmer to proceed pro se. The violation of Palmer's right to counsel is a structural error, and therefore, we reverse and remand for a new trial.

Although our holding regarding Palmer's right to counsel is dispositive, we address some additional issues which are likely to arise on remand.

II.  RIGHTS OF CONFRONTATION, SELF-REPRESENTATION, AND PRESUMPTION OF INNOCENCE

Palmer argues that the trial court violated his confrontation right, his right to self-representation, and his right to the presumption of innocence by forcing him to question AD and PD through standby counsel, and by allowing AD and PD to face away from him while testifying. We agree that the trial court failed to conduct the analysis that was essential to ensure Palmer's rights were not violated.

A.  The Trial Court Violated Palmer's Right of Confrontation, Right of Self-Representation, and Right to the Presumption of Innocence

Constitutional challenges are issues of law we review de novo. *Price*, 169 Wn. App. at 655-56. The confrontation clause states that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In general, the confrontation clause reflects a preference for face-to-face confrontation that must occasionally give way to public policy and the necessities of a case. *State v. Foster*, 135 Wn.2d 441, 456-57, 957 P.2d 712 (1998). Washington's constitution provides a similar preference for face-to-face confrontation. WASH. CONST. art. I, § 22; *State v. Martin*, 171 Wn.2d 521, 531, 252 P.3d 872 (2011).

52362-1-II

Under the Sixth Amendment to the United States Constitution, generally, a court may dispense with the usually preferred face-to-face confrontation for child witnesses in abuse cases: "[I]f the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Maryland v. Craig*, 497 U.S. 836, 855, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990).[4] Violations of a pro se defendant's confrontation right may also violate such defendant's right to self-representation because how to confront a witness is an important strategic decision for a self-represented litigant. *See State v. Coristine*, 177 Wn.2d 370, 376, 300 P.3d 400 (2013) (recognizing that the Sixth Amendment guarantees a defendant's right to control important strategic decisions of their case).

It is well established that criminal defendants have a right to self-representation under the United States and Washington Constitutions. *State v. Curry*, 191 Wn.2d 475, 482, 423 P.3d 179 (2018). Courts must allow pro se defendants to control strategic decisions regarding their defense. *Id.* Even so, a court's order requiring standby counsel to question the complaining witnesses instead of the pro se defendant does not *automatically* violate their right of self-representation. *State v. Estabrook*, 68 Wn. App. 309, 317-18, 842 P.2d 1001 (1993) (emphasis added); *McKaskle v. Wiggins*, 465 U.S. 168, 174, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984). The court must ensure both that the defendant retains control over their defense and that the jury is not confused by standby counsel's participation. *McKaskle*, 465 U.S. at 178.

---

[4] *Craig* addressed a Maryland statute similar to RCW 9A.44.150, which allowed child witnesses to testify away from the courtroom via a one-way closed-circuit television.

52362-1-II

Moreover, changes to courtroom procedures, like procedures for questioning witnesses, must comport with the protections of due process, thereby ensuring a fair trial. The presumption of innocence is an elementary component of a fair trial. *State v. Chacon*, 192 Wn.2d 545, 549, 431 P.3d 477 (2018). Courts must be "wary of a setting that impermissibly influences a jury's decision-making process and jeopardizes the presumption of innocence." *State v. Jaime*, 168 Wn.2d 857, 862, 233 P.3d 554 (2010). Modifications that jeopardize the presumption of innocence are prejudicial. *Id*. at 863-64. When a defendant challenges a court process by arguing that it violates their right to the presumption of innocence, we must determine whether the process presented an unacceptable risk that the jury's deliberation was based on impermissible factors. *Id*.

Here, Palmer argues that the trial court violated his confrontation right, his right to self-representation, and his right to the presumption of innocence by forcing him to question AD and PD through standby counsel, and by allowing AD and PD to face away from him while testifying.

In order to modify courtroom procedures to prevent a face-to-face confrontation between a witness and the defendant, a trial court is required to analyze why such changes are necessary and what impact they will have on the defendant's rights. *See Craig*, 497 U.S. at 855; *McKaskle*, 465 U.S. at 178; *Jaime*, 168 Wn.2d at 862. But such an analysis does not appear in the record. Absent an analysis, the trial court was constitutionally prohibited from modifying its courtroom procedures in the manner it did.

III.    RIGHT AGAINST SELF-INCRIMINATION

Palmer argues that the State violated his right against self-incrimination when it solicited comments from Ramirez at trial about Palmer's decision to remain silent. We agree.

12

52362-1-II

A.    Standard of Review

Palmer challenges the constitutionality of the State's eliciting witness comments on Palmer's post-arrest silence.  We review such challenges de novo.  *Price*, 169 Wn. App. at 655-56.

B.    Legal Principles

The Fifth Amendment to the United States Constitution states that no person "shall . . . be compelled in any criminal case to be a witness against himself."  U.S. CONST., amend V.  The Washington Constitution contains a similar provision: "[n]o person shall be compelled in any criminal case to give evidence against himself."  WASH. CONST., art. I, § 9.  Washington courts have interpreted both provisions to provide the same protection.  *State v. Easter*, 130 Wn.2d 228, 235, 922 P.2d 1285 (1996).

The right against self-incrimination prohibits the State from eliciting comments from witnesses about the defendant's pre- or post-arrest silence.  *Id*. at 236.  The State may also not suggest the defendant is guilty because they chose to remain silent, because the assurance of *Miranda* is that remaining silent will not be penalized.  *Id*.

C.    Analysis

Here, the State unequivocally elicited a comment from Ramirez about Palmer's decision to remain silent.  The State asked Ramirez if he had spoken to Palmer after Palmer's arrest and overnight confinement.  Ramirez testified, "I went back the next morning, thinking that, you know, a day sitting in the county jail, you know, there's some time to think, and maybe Mr. Palmer would want to do the right thing here."  RP (July 5, 2018) at 75.  Ramirez further testified that he told Palmer, "You've had some time to think.  Do you want to talk?" and that Palmer responded that he did not want to talk.  RP (July 5, 2018) at 75.

13

52362-1-II

Ramirez's testimony was a comment on Palmer's right to remain silent. *See Easter*, 130 Wn.2d at 236. More pointedly, contrary to *Easter*, the State suggested that Palmer was guilty due to his silence. *See Id*. Indeed, Ramirez testified that Palmer remained silent after being given a chance to "do the right thing" by admitting criminal conduct. RP (July 5, 2018) at 75. This statement presupposed Palmer's guilt and created an impossible choice: Palmer could either do right by confessing to molesting a child or do wrong by remaining silent. Implicit in the "silence equals wrongfulness" notion is that silence withholds the "truth"—that "truth" being one's criminal conduct, *even if there was no criminal conduct*. In this context, a defendant cannot maintain their presumption of innocence by remaining silent. A detective's belief on this front may assist with their investigative duty, but established authority prohibits using a defendant's right to remain silent to suggest guilt to the jury. *Easter*, 130 Wn.2d at 236. Alone, this violation may warrant reversal and a new trial. However, because we reverse on other grounds, we remind the State that it is forbidden from eliciting comments about Palmer's silence during his new trial.

### SAG

Palmer raises five grounds in his SAG, contending that each error requires dismissal of his convictions with prejudice. First, Palmer argues that the State violated attorney-client privilege by taking his discovery notes intended for his counsel's review and by reading through them. Second, Palmer argues that the State violated the *Brady*[5] rule by failing to provide exculpatory or impeaching evidence for his defense. Third, Palmer argues the court erred by denying him fair bail and by failing to impose the least restrictive conditions for pretrial release. Fourth, he contends that his right to a speedy trial was denied. And fifth, he requests a reversal of his convictions based on the cumulative error doctrine.

---

[5] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

14

52362-1-II

We hold that none of Palmer's SAG arguments warrant a reversal or dismissal of his convictions because they are either not supported by the record, were not properly raised below in the trial court, or fail on the merits.

I.      GROUND 1—ATTORNEY-CLIENT PRIVILEGE

Palmer argues that the State violated attorney-client privilege by taking his discovery notes intended for his counsel's review and reading through them, which requires dismissal of his convictions with prejudice. We decline to address the issue.

A SAG should refer only to documents that are contained in the record on review. RAP 10.10(c). We will not search the record for support of a defendant's claims. RAP 10.10(c).

Here, the record before us does not support Palmer's contention that, when he reviewed discovery and tried to mail his notes to his counsel, the State took his notes and read through them, which violated attorney-client privilege. We need not search the record for support of his claims. RAP 10.10(c). Accordingly, we decline to address the issue.

II.      GROUND 2—ALLEGED *BRADY* VIOLATIONS

Palmer argues that the State violated the *Brady* rule by failing to provide exculpatory evidence for his defense, which requires dismissal of his convictions with prejudice. We disagree.

A.      Legal Principles

There are three components to a *Brady* violation: (1) the evidence at issue must be favorable to the accused, because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material, meaning that the evidence must have resulted in prejudice to the accused. *State v. Sublett*, 156 Wn. App. 160, 200, 231 P.3d 231 (2010). If a defendant fails to demonstrate any of the three elements, the *Brady* claim fails. *Id*. at 200-01. "Prejudice occurs 'if there is a reasonable

15

probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 200 (quoting *Strickler v. Greene*, 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).

"'A *Brady* violation does not arise if the defendant, using reasonable diligence, could have obtained the information at issue.'" *Sublett*, 156 Wn. App. at 200 (internal quotation marks omitted) (quoting *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 916, 952 P.2d 116 (1998)). In reviewing a *Brady* challenge on direct review, we can consider only matters demonstrated by the trial record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

B.      Analysis

First, Palmer argues that the State violated the *Brady* rule because it failed to produce the substance of AD's, PD's, and DD's oral statements in their May 19, 2017 interview. We disagree.

Here, Palmer fails to show a *Brady* violation with respect to PD's statements because he admits that the State provided PD's statements before trial. Thus, there was no suppression by the State either willfully or inadvertently.

With respect to AD's and DD's statements in the May 19, 2017 interview, their alleged statements are not part of the trial record. Thus, we cannot examine whether these statements were exculpatory or impeaching.

Second, Palmer argues that the State violated the *Brady* rule because it failed to produce "the AD scratch material." SAG at 12. More specifically, Palmer appears to contend that the State's failure to produce something he refers to as "the Holmes report" and associated photographs amounted to a *Brady* violation. SAG at 16. We disagree.

16

52362-1-II

Palmer fails to demonstrate a *Brady* violation with respect to the AD scratch material because he fails to argue how the Holmes report or the scratch photos themselves were exculpatory or impeaching in anyway. Accordingly, this argument fails.

Third, Palmer argues that the State violated the *Brady* rule because it failed to produce "the Christmas video and photos from the protection order case." SAG at 12-13. We disagree.

Here, Palmer fails to demonstrate a *Brady* violation with respect to the Christmas video and photos because he could have obtained that evidence by using reasonable diligence. In fact, Palmer admits that "[he] gave copies of the video(s) to the [Grays Harbor County] court clerk and the commissioner who heard the protection order case." SAG at 21. Accordingly, this argument fails.

III.  GROUND 3—DENIAL OF FAIR BAIL AND LEAST RESTRICTIVE CONDITIONS OF RELEASE

Palmer argues the court erred by denying him fair bail and by failing to impose the least restrictive conditions of pretrial release as required by CrR 3.2(c). He seeks dismissal under CrR 8.3(b). We decline to address the issue.

A defendant cannot raise an issue for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). "Application of RAP 2.5(a)(3) depends on the answers to two questions: '(1) Has the party claiming error shown the error is truly of constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest?'" *State v. Grott*, 195 Wn.2d 256, 267, 458 P.3d 750 (2020) (quoting *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015)). To be manifest error under RAP 2.5(a)(3), the defendant must show "'actual prejudice.'" *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).

17

52362-1-II

Here, the State requested bail in the amount of $50,000 in pretrial proceedings and asked the court to deny Palmer's request to be released on his personal recognizance, which the court granted. Palmer raised no issue with the bail amount and only raised issue with release conditions insofar as geography was concerned. Because Palmer did not raise the issues he now complains of in the trial court, and because Palmer does not argue the issue constitutes manifest constitutional error, we refuse to consider his claims under RAP 2.5.

But even if we reached the issues that Palmer complains of, they are moot. An appeal is moot if "the matter is 'purely academic' such that the court cannot provide effective relief." *Ctr for Biological Diversity v. Dep't of Fish & Wildlife*, 14 Wn. App. 2d 945, 985, 474 P.3d 1107 (2020) (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 258, 138 P.3d 943 (2006)). Here, we cannot provide Palmer with effective relief for pretrial incarceration or bail issues, so the issue is moot. Thus, this argument fails in any event.

Palmer also briefly contends that the prosecutor committed prejudicial misconduct by requesting bail in the amount of $50,000 based on the severity of the charges pending against him. We decline to address the issue.

"'In order to establish prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Slater*, 197 Wn.2d 660, 681, 486 P.3d 873 (2021) (internal quotation marks omitted) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (plurality opinion)). "However, 'failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'" *Id*. (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

18

52362-1-II

Here, Palmer cites no case law finding prosecutorial misconduct in the context of pretrial proceedings. Regardless, Palmer failed to object to the requested bail amount and fails to show how the State's requested bail amount was improper, flagrant, or ill-intentioned, especially in light of the severity of the charges pending against him. We decline to further address the issue.

IV.     GROUND IV—SPEEDY TRIAL

Palmer argues that the trial court violated his constitutional right to a speedy trial by continuing the trial date on multiple occasions. However, although Palmer is not required to cite to the record, the continuance orders he references do not appear to be in the record on appeal. We are not obligated to search the record in support of claims made in Palmer's SAG. RAP 10.10(c); *State v. Thompson*, 169 Wn. App. 436, 493 n.195, 290 P.3d 996 (2012).

We note that Palmer admits that he waived his speedy trial rights three times. On this record, however, we are unable to review Palmer's speedy trial argument.

V.     CUMULATIVE ERROR

Palmer appears to contend that the cumulative error doctrine warrants reversal of his convictions. "Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *State v. Emery*, 174 Wn.2d, 741, 766, 278 P.3d 653 (2012). Based on the arguments we address, Palmer fails to show cumulative errors requiring reversal of his convictions with prejudice. Accordingly, this argument fails.

We hold that none of Palmer's SAG arguments warrant a reversal of his convictions because they are either not supported by the record, were not properly raised below in the trial court, or fail on the merits.

19

52362-1-II

CONCLUSION

We conclude that the trial court committed reversible error by denying Palmer his right to counsel. However, we conclude that none of Palmer's SAG arguments warrant a reversal or dismissal of his convictions with prejudice. We reverse the convictions and remand to the trial court for a new trial.[6]

_____
Veljacic, J.

We concur:

_____
Worswick, P.J.

_____
Lee, J.

---

[6] On the eve of oral argument, Palmer filed a supplemental designation of clerk's papers with our court. We will treat this designation of clerk's papers as a motion to supplemental the record. We deny the motion and place the clerk's papers in the court file without action.