IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38821-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRENT J. BRANT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Brent Brant was convicted of felony harassment and third degree assault. He appeals arguing the trial court erred in finding he had forfeited his right to counsel and that the trial judge violated the appearance of fairness doctrine and improperly commented on the evidence.[1] Finding no error, we affirm.

BACKGROUND

Mr. Brant threw a water bottle at police officers who were searching for another individual. The bottle landed on the ground near an officer, splashing water on the officer's face and clothing. While being placed under arrest, Mr. Brant told the arresting officer that he was "'about to headbutt the shit out of [him].'" Clerk's Papers (CP) at 2.

---

[1] Mr. Brant filed a statement of additional grounds for review under RAP 10.10 seeking review of numerous issues.

In the presence of the arresting officer and a second officer, Mr. Brant asked for their home addresses so he could kill their wives. Consequently, the State charged Mr. Brant with felony harassment and third degree assault.

Counsel from the Franklin County Office of Public Defense (FOPD) was appointed to represent Mr. Brant. Mr. Brant made a complaint against assigned counsel in this case as well as another assigned counsel, also from the FOPD, in a separate matter. Both attorneys reported having substantial difficulties communicating with Mr. Brant and receiving periodic threats from him. Assigned counsel in this matter also reported concerns for her safety and the safety of her family due to threats made by Mr. Brant.

As a result of Mr. Brant's complaints and threats, both attorneys requested to be withdrawn as Mr. Brant's attorney of record. The trial court granted the attorneys' request, discharged both attorneys, and admonished Mr. Brant that if he engaged in a pattern of conduct that led the court to believe he was attempting to frustrate the judicial process, he could lose his right to counsel.

Another attorney from the FOPD was appointed to represent Mr. Brant in both cases. At a subsequent hearing, defense counsel informed the court that Mr. Brant was again requesting new counsel because he wanted to subpoena his current counsel as a witness for his bail jumping charge in the second case and refused to talk with his counsel for fear of witness tampering. Addressing the court, Mr. Brant requested that his counsel

2

be removed because he planned on calling him as a witness and said he needed an

attorney that was not associated with the FOPD since he had pending litigation against

the FOPD "for denying me my rights and for this courtroom denying me my rights also."

Rep. of Proc. (RP) (Jan. 28, 2020) at 14.

Mr. Brant was then appointed a third attorney in this case. However, the third

attorney later advised the trial court that she could not continue representing Mr. Brant

due to disagreement between her and Mr. Brant regarding how she should handle his

case:

> Mr. Brant and I have an issue effectively working the case. Although the
> communication between ourselves is respectful, we are at a point where I
> cannot effectively represent him based upon the requests that are made
> upon me and the way that he believes the law should be able to work for his
> case.

*Id*. (Jan. 5, 2021) at 15. The trial court questioned Mr. Brant regarding counsel's request

to withdraw. Mr. Brant responded that if his attorney wanted to step down it was "her

choice," but insisted that the trial court appoint another attorney to represent him. *Id*.

(Jan. 5, 2021) at 16. When asked if his relationship with his attorney had deteriorated to

the point that the case could not move forward, Mr. Brant responded, "If she refuses to

file motions on the basis that my rights were denied by another attorney that need to be

admonished by this very court for the denial of my rights." *Id*. (Jan. 5, 2021) at 17. Mr.

Brant then explained that despite his insistence, defense counsel was refusing to file

motions "on the basis of another attorney from the Office of Public Defense denying [him his] rights." *Id.* (Jan. 5, 2021) at 18. The trial court determined defense counsel for Mr. Brant would again be removed and instructed Mr. Brant to work with the FOPD to be appointed a fourth attorney.

Following removal of Mr. Brant's third attorney, Larry Zeigler, manager of the FOPD, filed an affidavit with the court stating that Mr. Brant had filed a lawsuit against the FOPD, and as a result of the lawsuit, Mr. Brant had created an actual conflict of interest that barred the FOPD from further representation of him. Mr. Zeigler also informed the court that Mr. Brant had exhausted the entire panel of public defenders.

Because new counsel had not been appointed, at a later hearing the trial court attempted to appoint counsel for Mr. Brant from the FOPD. Mr. Brant maintained that as a result of his lawsuit, the FOPD was barred from representing him, along with anyone from the Northwest Justice Project or CLEAR. When it was explained to the trial court that none of the attorneys from the FOPD were eligible to represent Mr. Brant, the court withdrew its attempted appointment.

The State then sought clarification on whether the trial court intended to appoint a fourth attorney to represent Mr. Brant. Judge Samuel Swanberg clarified that based on Mr. Brant's prior conduct he had forfeited his right to counsel. Judge Swanberg entered written findings of fact, finding, in part, that Mr. Brant's conduct had "willfully interfered

4

with the timely administration of justice in this matter causing undue delays, and such

conduct and delay is most likely to continue if the right to assigned counsel is not

forfeited at this time." CP at 52-53. In part, Judge Swanberg concluded:

> The Defendant has engaged in meritless pattern of willful conduct that has repeatedly prevented all his assigned attorneys from effectively and ethically representing him. This conduct has run the gamut from not cooperating with counsel in their attempts at representation, to filing complaints against counsel, to making threats of physical harm to counsel and their families.
> . . . .
> The Court finds that the defendant's behavior constitutes extremely dilatory conduct and/or extremely serious misconduct and he has thereby forfeited his right to assigned counsel as a result.

*Id*. at 53-54.

JURY SELECTION

Mr. Brant's case proceeded to a jury trial. In advance of trial, the court granted

many of the State's motions in limine. Among others, the trial court ordered Mr. Brant

not to express to the jury his opinion on the legitimacy of the court and not to discuss the

procedural history of the case, the number of attorneys that had represented him, or the

court's finding that Mr. Brant had forfeited his right to counsel.

During jury selection, Mr. Brant repeatedly violated the trial court's orders. In

response to a prospective juror's statement that they had witnessed a shooting in a Fred

Meyer store, Mr. Brant asked whether the shooting "could have been prevented if Sam

Swanberg would have acted judicially?" *Id*. (Mar. 23, 2022) at 85. The trial court

5

instructed Mr. Brant that the issue was not before the court and Mr. Brant could ask the prospective juror about her biases and whether she could sit as an impartial juror. Mr. Brant then persisted in discussing Judge Swanberg, stating he had been involved in this case (apparently referring to the fact that Judge Swanberg had ruled on Mr. Brant's forfeiture of his right to counsel) and that the judge had since been removed from the bench:

> OK. I don't really know how to articulate or where, what I'm trying to say. But because Sam Swanberg is connected directly to that shooting and he has been removed from the bench and he is directly related to this case with the things I'm not allowed to speak of, I don't, I don't know how to say anything without being held in contempt. So I—but the one s [sic] that are in law enforcement or security, they should automatically be disqualified, and I'm quite sure that the fellow who's mad at the police would be a great person to have for Mr. Stovern, but I believe that these guys should be excluded just on the basis of having that, and I don't know how else to say it.

*Id*. (Mar. 23, 2022) at 85-86.

Mr. Brant later questioned a prospective juror about whether they knew Judge Swanberg and whether they knew why Judge Swanberg had been removed from the bench. These questions caused Mr. Brant to again be admonished by the court. Appearing to reference his lack of counsel, Mr. Brant stated that he was not allowed to speak and repeatedly indicated he was unsure what questions he could ask or what he was allowed to say.

6

No. 38821-2-III
*State v. Brant*

One prospective juror's observations of Mr. Brant's actions and statements caused them to question whether Mr. Brant had refused legal counsel. The trial court responded that it could not answer the question. Several members of the venire then expressed that Mr. Brant's statements had prejudiced them either in favor of or against him.[2]

The State later asked the venire if any of them would have difficulty being unbiased with regard to whether to convict Mr. Brant because he was representing himself. A member of the venire inquired why Mr. Brant did not have counsel and questioned if this was being forced on Mr. Brant. The trial court again responded by stating that the question could not be answered. The prospective juror stated he felt he could not convict Mr. Brant based on the fact that Mr. Brant was not represented by counsel. The State moved to have the juror struck for cause. In response to the court asking if he opposed the State's motion, Mr. Brant stated:

> I want him kept for the reason that he is actually willing and to—and realizes that this, what is happening, is not within the legal limits of what this Court has of what this Court does, and he—I need to have a person like that as the chairman of this.

*Id*. (Mar. 23, 2022) at 116. Mr. Brant said he needed the prospective juror on the jury because "he does know that what's happening is a violation of my rights." *Id*. (Mar. 23, 2022) at 117.

---

[2] These jurors were all struck for cause.

These comments from Mr. Brant resulted in a discussion among the trial judge, the State, and Mr. Brant in chambers. The State reported to the judge that it was concerned that unless the issue regarding Mr. Brant's representation was addressed, an impartial jury could not be seated. The State recognized that Mr. Brant's statements were creating confusion regarding whether he was afforded the opportunity to have a lawyer. The State argued that Mr. Brant had opened the door to the forfeiture issue, and it would therefore be appropriate for the jury to be informed that Mr. Brant forfeited his right to counsel based on his own conduct.

The trial judge considered how best to address the issue, noting he was attempting to balance Mr. Brant's right to not expose this information against Mr. Brant's actions that tainted the jury pool in his favor. The judge determined that he would state that Mr. Brant forfeited his right to an attorney based on his conduct and that Mr. Brant disagreed with the decision. This statement was then made to the jury.

When jury selection resumed, Mr. Brant immediately violated the court's prior order, stating to the venire that his right to counsel had been taken from him due to the slander and deceit of Judge Swanberg who had ruled on his right to counsel. After the State concluded its voir dire, Mr. Brant was allowed to address the venire. Rather than ask a question, Mr. Brant stated, "[The State] just mentioned the procedural things and

8

what we're not allowed to talk about, what I'm not allowed to talk about is [that] these are not procedural things.  This is an unconstitutional criminal despotic act by Franklin County."  *Id*. (Mar. 23, 2022) at 132.  Mr. Brant then asked the jury if any of them wanted to know "the rest of the truth other than what they cut, copied, edit and paste?"  *Id*. (Mar. 23, 2022) at 133.  The court informed Mr. Brant that the jury needed to rely on the information given to them.  Mr. Brant later stated, "I would gladly love to tell them that Judge Samuel Swanberg is actually abusing case law and has abused me from the bench in this despotic criminal tack, but you'll hold me in, convict and hold me?  This chair, a chair—"  *Id*. (Mar. 23, 2022) at 133.

Based on Mr. Brant's statements, the trial court elected to read to the venire the findings of fact and conclusions of law related to Mr. Brant's forfeiture of his right to counsel.

TRIAL

During trial, Mr. Brant questioned the officer on whom he had splattered water and threatened.  During his cross-examination, Mr. Brant repeatedly attempted to ask questions regarding facts that were not in evidence, called for a response that would not be admissible, and asked compound questions.  The court attempted to guide Mr. Brant in the phrasing of his questions and prevent him from asking compound questions.  The court advised Mr. Brant it could not tell him what questions to ask and noted it had to

9

stop Mr. Brant if he asked multiple questions at the same time. Mr. Brant responded,

"Well, maybe I need a lawyer, State of Washington." *Id*. (Mar. 23, 2022) at 210.

Mr. Brant then began asking questions without providing the officer time to respond and repeatedly inserted his own discussion and commentary into his questioning. The State objected. It was at this point the court noted that Mr. Brant was smiling and laughing at the State's objection. The trial court found Mr. Brant in contempt and reprimanded him for attempting to bring in evidence that had already been deemed inadmissible:

> You've turned this into an embarrassment with how you laughed and I'm going to hold you in contempt. OK? It's not funny. I appreciate that you think it's funny. It's not. There's a roomful of people that have taken their day to be here and tomorrow to be here and whatever time it may take. Take it seriously. We've had this discussion. You can't bring it up. Have you standing objection to it [sic]. That's OK. Don't back end it and then smile.

*Id*. (Mar. 23, 2022) at 212.

When Mr. Brant began to ask the officer questions regarding another officer's civil lawsuit and a letter of reprimand, the State objected. The trial court sustained the objection and informed Mr. Brant that those issues were not part of the case so he could not discuss them. In front of the jury, Mr. Brant responded, saying the other officer "was given a letter of reprimand for assaulting a 16-year-old. That was my niece." *Id*. (Mar.

23, 2022) at 223.  Mr. Brant also made disrespectful comments regarding the prosecutor in front of the jury, which the trial court admonished him for.

Mr. Brant ignored the court's warnings and began to discuss the letter of reprimand again.  The court inquired if Mr. Brant had heard its previous warning, and Mr. Brant responded, "I don't know what I'm hearing from you." *Id*. (Mar. 23, 2022) at 229.  Mr. Brant subsequently made several statements to the officer instead of posing questions and was twice more reminded by the court that he needed to ask questions. When Mr. Brant appeared to start to say he did not know how to word his question, the following exchange occurred:

> [THE STATE]: Quit lying.  That's the secret.
>
> MR. BRANT: Pardon me?
>
> THE COURT: Stop.  OK.  You are doing OK at this particular moment.  [Counsel for the State], if I heard what I believe you said, don't do it again.
>
> [THE STATE]: I won't.
>
> THE COURT: And I don't want to hold you two to a different standard.  I'm not allowed to do that.  It is clear that it is occurring and I'm throwing him a bone, but I'm going to hold you to don't go to his level.

*Id*. (Mar. 23, 2022) at 235.

The jury found Mr. Brant guilty on both charges.  Mr. Brant timely appeals.

ANALYSIS

On appeal Mr. Brant contends the trial court erred in finding he had forfeited his right to counsel and that the trial judge violated the appearance of fairness doctrine and improperly commented on the evidence.

I. FORFEITURE OF RIGHT TO COUNSEL

Mr. Brant argues the trial court erred in finding that he had forfeited his right to counsel. We disagree. Substantial evidence supports the trial court's findings of fact related to Mr. Brant's forfeiture of his right to counsel.

Constitutional challenges, including a violation of the right to counsel, are issues of law we review de novo. *State v. Palmer*, 24 Wn. App. 2d 1, 11, 518 P.3d 252 (2022), *rev. denied*, 1 Wn.3d 1002, 526 P.3d 252 (2023).

A criminal defendant has the right to the assistance of counsel under both the federal and state constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. However, this right is not absolute. *State v. Stutzke*, 2 Wn. App. 2d 927, 937, 413 P.3d 1037 (2018). "A defendant can lose the right to counsel in three ways: (1) waiver, (2) forfeiture, or (3) waiver by conduct." *Id*. The focus of this case is forfeiture.

"Forfeiture results in the loss of the right to counsel regardless of whether the court has warned the defendant of the consequences of their misconduct or the risks of proceeding without counsel." *Palmer*, 24 Wn. App. 2d at 12. To forfeit the right to

counsel, a defendant must engage in "'extremely dilatory conduct.'" *Id*. (quoting *In re Dependency of E.P.*, 136 Wn. App. 401, 405-06, 149 P.3d 440 (2006). Threats or abusive behavior by a defendant toward their counsel constitutes extremely dilatory conduct that may result in forfeiture. *Id.* at 13. A complete failure to communicate with counsel also constitutes extremely dilatory conduct. *Id*.

Mr. Brant argues that the record does not support of a finding of extremely dilatory conduct.

We review a trial court's findings of fact for substantial evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 679, 101 P.3d 1 (2004). "Substantial evidence exists where there is a 'sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding.'" *Id*. (quoting *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994)). "The party challenging a factual finding bears the burden of proving that it is not supported by substantial evidence in the record." *Id.* at 680.

We review a trial court's conclusions of law de novo. *State v. Atchley*, 142 Wn. App. 147, 154, 173 P.3d 323 (2007).

Here, the record supports the trial court's finding that Mr. Brant engaged in extremely dilatory conduct. Along with the communication difficulties expressed by counsel, Mr. Brant threatened his first attorney in this case, such that she feared for her

safety and the safety of her family, and asked to be removed from his case. A second

attorney was appointed to represent Mr. Brant, but this attorney was subsequently

removed from the case because Mr. Brant had refused to speak with him because Mr.

Brant had insisted on calling him as a witness and stated that he needed an attorney

outside of the FOPD due to pending litigation.[3] Mr. Brant's third attorney was allowed to

withdraw after she informed the court she could not effectively work with Mr. Brant

based on his belief in how the law should work, and Mr. Brant stated that he could not

work with her if she refused to file the motions he requested related to another attorney

allegedly denying him his rights.

In addition to his belligerent behavior with his attorneys, Mr. Brant adamantly

maintained that his lawsuit barred the FOPD from providing him representation. He

further rejected being represented by the Northwest Justice Project and CLEAR.

Although the court attempted to appoint a fourth attorney to represent Mr. Brant, the

appointment was withdrawn because the attorney was part of the FOPD. Eventually, the

---

[3] In his opening brief, Mr. Brant asserts that it was "very possible" that his second attorney would need to be called as a witness, but fails to explain or support this assertion. Appellant's Opening Br. at 38. Thus, we decline to address it. *See State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008) ("Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review."), *rev'd on other grounds*, 170 Wn.2d 117, 240 P.3d 143 (2010).

court determined that based on his prior conduct, including his unwillingness to cooperate with appointed counsel, Mr. Brant had forfeited his right to counsel.

Mr. Brant's history with three attorneys, including his threatening behavior toward his first attorney, his refusal to cooperate with his second attorney, and his insistence that his third attorney file frivolous motions, constituted extremely dilatory conduct. Further, Mr. Brant initiated a lawsuit against the FOPD and made clear that his intent was to bar the FOPD and affiliate programs from representing him. These actions, as the trial court found, demonstrated willful interference with the administration of justice and caused undue delays. The record supports the trial court's finding of extremely dilatory conduct and determination that appointing a fourth attorney for Mr. Brant would have only resulted in a continuation of his behaviors and undue delay.[4]

---

[4] Mr. Brant alleges several alleged misstatements in the affidavit filed by Mr. Zeigler, arguing that the affidavit is not supported by other evidence. He appears to confuse our review of the trial court's findings and conclusions with our review of the affidavit, arguing that Mr. Zeigler's statements were not supported by evidence. However, the affidavit itself is evidence and need not be supported by other evidence. Additionally, Mr. Brant's attack of the statements contained in the affidavit appear to be a request for this court to weigh evidence and make credibility determinations. We decline to do so. *See State v. Rafay*, 168 Wn. App. 734, 843, 285 P.3d 83 (2012) ("Credibility determinations are reserved for the trier of fact, and an appellate court 'must defer to the [trier of fact] on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence.'" (alteration in original) (quoting *State v. Liden*, 138 Wn. App. 110, 117, 156 P.3d 259 (2007))).

15

Mr. Brant appears to contend that because he communicated and cooperated with his third attorney and merely disagreed with her regarding some aspects of the law, the trial court could not find his conduct was extremely dilatory. However, the mere fact that Mr. Brant was occasionally cooperative does not preclude the trial court's finding of forfeiture. A defendant's insistence that their attorney file frivolous motions can support a finding of extremely dilatory conduct. *See Palmer*, 24 Wn. App. 2d at 13. Here, Mr. Brant insisted his third attorney file motions against other attorneys at the FOPD that were immaterial his case.[5] Mr. Brant's argument is unpersuasive.

Substantial evidence supports the trial court's findings that Mr. Brant's threats and refusal to cooperate with counsel constituted extremely dilatory conduct that resulted in undue delay of the proceedings. Accordingly, we affirm the trial court's conclusion that he forfeited his right to counsel.[6]

---

[5] Mr. Brant offers no explanation of how these motions were not frivolous.

[6] Mr. Brant also argues that the trial court's findings of fact and conclusions of law were in error because they contradicted the trial court's prior oral statement that the FOPD would need to assist him in finding an attorney. RP (Jan. 5, 2021) at 18. An oral opinion by the trial court is considered an expression of the court's informal opinion, and is not final or binding on the parties unless it is incorporated into findings and conclusions, or a judgment and sentence. *See also Grieco v. Wilson*, 144 Wn. App. 865, 872, 184 P.3d 668 (2008) ("[I]f the oral decision conflicts with the written decision, the written decision controls.") *aff'd sub nom. In re Custody of E.A.T.W.*, 168 Wn.2d 335, 227 P.3d 1284 (2010). Accordingly, we disagree with Mr. Brant's argument.

II. APPEARANCE OF FAIRNESS

Mr. Brant argues the trial court violated the appearance of fairness doctrine when it read to the venire the findings of fact and conclusions of law related to his forfeiture of the right to counsel.[7]  Mr. Brant contends the trial court also violated the appearance of fairness doctrine when it instructed the prosecutor not "go to [Mr. Brant's] level."  RP (Mar. 23, 2022) at 235.  We determine that the trial court's actions and statements did not violate the appearance of fairness doctrine because the context of these statements demonstrates that the trial court was trying to maintain the decorum of its courtroom despite Mr. Brant's best efforts to disrupt the proceedings.

"Criminal defendants have a due process right to a fair trial by an impartial judge." *In re Pers. Restraint of Swenson*, 158 Wn. App. 812, 818, 244 P.3d 959 (2010).  This right goes beyond merely requiring that a judge be impartial but also requires a judge to appear impartial.  *Id*.  "The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of bias or prejudice."  *State v. Madry*, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972).

---

[7] Mr. Brant also argues he did not "open the door" to the jury being informed he had lost his right to counsel.  Appellant's Opening Br. at 58.  However, he fails to adequately explain or support this argument, and we therefore decline to address it.  *See* RAP 10.3(a); *Regan v. McLachlan*, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011) ("We will not address issues raised without proper citation to legal authority.").

We presume judges act without bias or prejudice. *Swenson*, 158 Wn. App. at 818. A judicial proceeding is valid if a reasonably prudent and disinterested observer would perceive that the parties had received a fair, impartial, and neutral hearing. *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995). "'The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes a reasonable observer knows and understands all the relevant facts.'" *State v. Sullivan*, 18 Wn. App. 2d 225, 245, 491 P.3d 176 (2021) (quoting *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2018)). The defendant must present some evidence of the judge's actual or potential bias in order to prove prejudice. *In re Marriage of Wallace*, 111 Wn. App. 697, 706, 45 P.3d 1131 (2002). Comments that are allegedly improper or biased are considered in context. *Id.*

First, Mr. Brant contends the trial court violated the appearance of fairness doctrine when it read to the venire the findings related to his forfeiture of the right to counsel. During voir dire, despite the trial court's orders to the contrary and repeated reminders, Mr. Brant continued to comment on the fact that he was not represented by counsel, maintaining that his rights were being violated. As a result, prospective jurors raised questions related to Mr. Brant's lack of representation and expressed bias in favor of Mr. Brant. Based on Mr. Brant's persistence, the trial court determined it needed to

inform the venire of his forfeiture of the right to an attorney based on his conduct.  Mr. Brant disagreed with the court's decision.

Before the venire, Mr. Brant continued to violate the court's prior order, attacking the credibility of a trial court judge and the constitutionality of the proceedings against him.  Despite repeated warnings, Mr. Brant alleged the trial court was hiding the truth.  Because Mr. Brant adamantly refused to comply with the trial court's order, the court was left with no alternative but to read to the venire the findings of fact and conclusions of law related to the forfeiture of Mr. Brant's right to counsel.

Mr. Brant contends the trial court's actions violated the appearance of fairness doctrine.  As stated above, we begin our analysis of an alleged violation of the appearance of fairness doctrine with a strong presumption that the trial court was acting without bias or prejudice.  To overcome this presumption, Mr. Brant must present evidence that the trial court was actually or potentially biased.  When considered in context, the decision to read the findings of fact and conclusions of law did not constitute a violation of the appearance of fairness doctrine.  The trial court only resorted to this remedial measure after it had repeatedly warned and reminded Mr. Brant that he was violating its orders.  Mr. Brant's persistent disregard for the trial court's orders resulted in biasing the venire and necessitated the trial court's response.  When prospective jurors began to question why Mr. Brant did not have counsel and expressed doubt as to whether

they could be impartial, the trial court crafted a neutral explanation that avoided explaining the facts surrounding Mr. Brant's forfeiture.

Following the court's neutral explanation, Mr. Brant continued to attack the constitutionality of the process, calling into question the ethicalness of the proceedings and accusing the court of wrongly depriving him of his right to counsel. Given Mr. Brant's continued refusal to cooperate with the trial court's orders and insistence on attacking the decision regarding the forfeiture of his right to counsel and the impact it was having on the venire, the trial court decided that it was obligated to read the findings of fact and conclusions of law to the venire.

In light of the trial court's repeated attempts to get Mr. Brant to comply with its order and Mr. Brant's blatant disregard of the trial court's authority, a reasonably prudent and disinterested observer would conclude that Mr. Brant obtained a fair, impartial, and neutral hearing. The trial court's reading of the findings of fact and conclusions of law was a last resort after a graduated attempt to gain Mr. Brant's compliance with its order. The trial court's decision to read the findings and conclusions was a result of Mr. Brant's own behavior, not the trial court's bias.

Second, Mr. Brant contends the trial court exhibited bias and violated the appearance of fairness doctrine when, in response to the State's comment "Quit lying.

20

That's the secret," it directed the State to not "go to [Mr. Brant's] level." RP (Mar. 23, 2022) at 235. We determine that the statement, when examined in the context of Mr. Brant's pattern of disruptive behaviors and disregard for the trial court's orders, did not demonstrate bias.

Mr. Brant repeatedly attempted to ask unpermitted questions, including asking the officer questions without allowing him time to respond, and repeatedly inserting commentary into his questioning. Despite the trial court's efforts to guide Mr. Brant in his phrasing of questions, Mr. Brant persisted to the point where it became apparent he was deliberately interjecting matters he knew he was not permitted to discuss.

In context, the trial court was attempting to maintain decorum in the courtroom. Despite Mr. Brant blatantly ignoring the trial court's numerous reminders, the trial court continued to patiently remind him to ask questions and not to discuss or ask questions about information the court had deemed inadmissible. Mr. Brant deliberately ignored the warnings and claimed ignorance on how to proceed. In an effort to maintain control of the courtroom, the court admonished the State when the prosecutor accused Mr. Brant of lying. The court then acknowledged that it was "throwing [Mr. Brant] a bone," as it was being lenient on him in his questioning, but told the State it was going to continue to hold it to a high standard and warned the prosecutor, "don't go to [Mr. Brant's] level." *Id.*

21

Within context, it is clear the trial court was working diligently to maintain control over the proceedings and was, in fact, admonishing the State for accusing Mr. Brant of lying in front of the jury. As such, a disinterested and prudent observer, after viewing the entire context leading up to the court's comment, would not find bias.

Mr. Brant's claims regarding violations of the appearance of fairness doctrine is not supported by the record.

III. IMPROPER COMMENT ON EVIDENCE

Mr. Brant argues the trial court improperly commented on the evidence by including in the definition of the assault instruction the statement that "[t]hrowing water on another person is considered a striking." Appellant's Opening Br. at 69 (boldface omitted). Because the trial court's instruction accurately stated the law, we disagree.

Jury instructions are reviewed de novo. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). "A judge is prohibited by article IV, section 16 of the state constitution from 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'" *Id*. (quoting *State v. Becker*, 132 Wn.2d 54, 65, 935 P.2d 1321 (1997)). A trial court violates this provision by merely implying their personal feelings on an element of an offense to the jury—an express remark is not necessary. *Id*. Such comments on the evidence are presumed prejudicial. *Id.* at 723. However, jury instructions that accurately

state the law are not improper comments on the evidence. *State v. Yishmael*, 195 Wn.2d

155, 174, 456 P.3d 1172 (2020).

The trial judge instructed the jury on the definition of assault:

> An assault is an intentional touching or striking of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive. *Throwing water on another person is considered a striking.*

CP at 78 (emphasis added). Mr. Brant contends that the court's inclusion of the

statement that "[t]hrowing water on another person is considered a striking," relieved the

State of its burden of proving intent. Appellant's Opening Br. at 69, 73 (boldface

omitted).

The instruction required the jury to find that a touching or striking did in fact

occur and any touching or striking was intentional. It did not resolve the factual issue of

whether Mr. Brant struck the officer or acted with intent to strike or touch the officer

when he threw his water bottle. It only clarified that throwing water at an individual

constituted a striking so that if the jury found that Mr. Brant intentionally threw water on

the officer, it could find a striking. This is consistent with a prior holding from this court

determining that splashing water on an individual can constitute a simple assault. *See*

*State v. Jimerson*, 27 Wn. App. 415, 420, 618 P.2d 1027 (1980).

As the jury instruction did not resolve the factual issue of intent and accurately described the law, it did not constitute an improper comment on the evidence.[8]

IV. STATEMENT OF ADDITIONAL GROUNDS

Mr. Brant raises several additional issues in his statement of additional grounds (SAG). For the following reasons, we determine that each of his arguments fails.

A. MOTIONS TO DISMISS

Mr. Brant asks that his "motion to dismiss and [his] 14-page motion to dismiss be included" in his appeal because the denial of both motions "were affected by the same abuse of process" and both were filed with the clerk of the court below. SAG at 2. Mr. Brant attempted to argue his motions to dismiss below, but the trial court informed him it could not be argued because it was not noted for the appropriate docket. Although it appears that Mr. Brant attempted to have the motion noted for the appropriate docket, he did not properly confirm the motion with the court. Therefore, the motions were never decided below, and Mr. Brant now appears to request review of the merits of the motions. We decline to consider these arguments for the first time on appeal. *See* RAP 2.5(a).

---

[8] Mr. Brant also contends reversal is required based on the cumulative error. However, as we find no error, we decline his request to reverse based on cumulative error. *See State v. Azevedo*, __ Wn. App. 2d __, 547 P.3d 287, 293 (2024).

24

B. CONTEMPT FINDING

Mr. Brant appears to argue that the trial court did not have the legal authority to find him in contempt on February 9, 2021. At the hearing, the court declined to consider Mr. Brant's motion to dismiss. In response, Mr. Brant argued with and interrupted the trial court judge. The court asked him to settle down and "not be belligerent." RP (Feb. 9, 2021) at 18. When the court tried to again explain to Mr. Brant why it could not consider his motion, he started yelling and swore at the judge. Mr. Brant refused to change his behavior and would not apologize to the court as directed by the judge. At that point, the trial court found Mr. Brant in contempt.

"If the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform, the court may find the person in contempt of court." RCW 7.21.030(2). Whether a court has authority to impose sanctions for contempt is a question of law that is reviewed de novo. *State v. Dennington*, 12 Wn. App. 2d 845, 850, 460 P.3d 643 (2020). Here, it appears the trial court's finding of contempt was based on Mr. Brant's failure to comply with the trial court's orders. A trial court has legal authority to find an individual in contempt for failure to comply with its orders. Thus, the trial court did have legal authority to find Mr. Brant in contempt, and his argument therefore fails.

C. ARGUMENTS THIS COURT DECLINES TO ADDRESS

Mr. Brant appears to argue that the trial court should not have issued a warrant when he failed to appear for a hearing because, contrary to the trial court's assertion, the judge had not previously informed him of the hearing. Mr. Brant failed to appear at a hearing on March 2, 2021. As a result, the trial court issued a bench warrant. Mr. Brant appeared at the next hearing and maintained that he had not received notification of the March 2 hearing. The trial court responded that it had informed Mr. Brant at a hearing on February 9, 2021.

Mr. Brant now objects to the trial court's issuance of a bench warrant and argues that it should have been quashed based on the trial court's failure to give him notice of the March 2 hearing. Although it appears that the trial court did not inform him of the March 2 hearing on the date it claimed to have, Mr. Brant did not bring a motion requesting the court quash the warrant or otherwise dispute the warrant. Accordingly, he has not properly preserved the issue for appeal, and we decline to address it.

Mr. Brant also raises arguments that appear to be related to the trial court's determination that he forfeited his right to counsel, including arguing that the trial court wrongly denied his request for accommodations under the American with Disabilities Act (it appears the requested accommodation was an attorney) and alleging that he was

unconstitutionally denied his right to counsel. As the forfeiture issue is already addressed above, we do not readdress the issue here.

Mr. Brant contends there was conflicting evidence related to the assault. This appears to be a request for this court to make a credibility determination. We decline to do so because such determinations are reserved for the trier of fact. *See Rafay*, 168 Wn. App. at 843.[9]

Mr. Brant also makes the following arguments: the State should be charged with kidnapping under 18 U.S.C. §§ 241-42; there was no evidence supporting an alleged threat to kill in the probable cause affidavit and other "different documents," SAG at 1, and that the trial court's issuance of a bench warrant at his March 2, 2021 hearing violated his right to a speedy trial. Each of these arguments fails because Mr. Brant does not inform this court "of the nature and occurrence of [the] alleged errors." RAP 10.10(c).

Mr. Brant argues that the trial court attempted to hold a competency hearing without defense counsel present. Following a competency evaluation, the trial court

---

[9] Mr. Brant also raises claims related to ethical issues with Judge Swanberg and his involvement with a shooting in Richland, a video containing discussion of dismissing the charges against Mr. Brant and then arresting him again, and Mr. Brant sustaining a concussion due to loud audio during the proceedings. As these claims involve facts and evidence outside the record, we decline to address them. *See State v. Johnson*, 4 Wn. App. 2d 352, 357 n.1, 421 P.3d 969 (2018).

No. 38821-2-III
*State v. Brant*

found Mr. Brant competent with defense counsel present.  As defense counsel was present at the hearing, this argument also fails because it does not inform this court of the nature and occurrence of the alleged error.  *Id*.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, A.C.J.